IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CIVIL ACTION NO. _____ |
| Plaintiff, | ) | JUDGE |
| v. | ) | |
| SUNOCO, INC., | ) | |
| Defendant. | ) | |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA") alleges:

## NATURE OF ACTION

1. This is a civil action brought against Sunoco, Inc. ("Sunoco") pursuant to Sections 113(b) and 304(a) of the Clean Air Act ("CAA" or the "Act"), 42 U.S.C. §§ 7413(b), 7604(a), for alleged environmental violations at Sunoco's petroleum refineries located in Philadelphia, Pennsylvania; Marcus Hook, Pennsylvania; Toledo, Ohio; and Tulsa, Oklahoma. (collectively "Covered Refineries").

2.  Upon information and belief, the Covered Refineries have been and are in violation of EPA's regulations implementing the following Clean Air Act statutory and regulatory requirements applicable to the petroleum refining industry:  Prevention of Significant Deterioration ("PSD"), Part C of Subchapter I of the Act, 42 U.S.C. § 7475, and the regulations promulgated thereunder at 40 C.F.R. § 52.21, and Non-Attainment New Source Review, Part D of Subchapter I of the Act, 42 U.S.C. §§ 7502-7503, and the regulations promulgated thereunder at 40 C.F.R. § 51.165, Part 51, Appendix S, and § 52.24 ("PSD/NSR Regulations"); New Source Performance Standards ("NSPS") promulgated at 40 C.F.R. Part 60, Subpart J; Leak Detection and Repair ("LDAR") standards at 40 C.F.R. Part 60, Subparts VV and GGG, Part 61, Subparts J and V, and Part 63, Subparts F, H, and CC; National Emission Standards for Hazardous Air Pollutants ("NESHAP") for Benzene Waste Operations, 40 C.F.R. Part 61, Subpart FF.

3.  Upon information and belief, the Covered Refineries have been and are in violation of the Pennsylvania Air Pollution Control Act, and its implementing regulations at 25 Pa. Code §§ 121-145; the Oklahoma Clean Air Act, Okla. Stat. tit. 27A §§ 2-5-101 - 118 and Oklahoma Administrative Code Title 252 Chapter 100, Air Pollution Control; Ohio Rev. Code Chapter 3704 and rules promulgated thereunder; and the state implementation plans ("SIPs") of Pennsylvania, Ohio and Oklahoma which incorporate and/or implement the federal regulations cited in Paragraph 2.

The United States seeks an injunction ordering Sunoco to comply with the above statutes and the regulations promulgated thereunder, and civil penalties for Sunoco's past and ongoing violations.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367; and Sections113(b) and 304(a) of the CAA, 42 U.S.C. §§ 7413(b) and 7604(a).

5.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a); and Sections 113(b) and 304(c) of the CAA, 42 U.S.C. §§ 7413(b) and 7604(c), because Sunoco is doing business in the Eastern District of Pennsylvania, and some of the violations alleged herein occurred at Sunoco's Refinery that is located in the Eastern District of Pennsylvania.  Sunoco has agreed to venue in this Court.

## NOTICE TO STATES

6.  The United States has provided notice of the commencement of this action to Pennsylvania, Ohio, and Oklahoma in accordance with the requirements of Sections 113(a)(1) and (b) of the CAA, 42 U.S.C. § 7413(a)(1) and (b).

## NOTICE TO ADMINISTRATOR AND SUNOCO

7.  Pennsylvania, Ohio, and Oklahoma and the Philadelphia Air Management Service ("AMS") have each provided notice of the commencement of this action to the Administrator of

3

EPA and to Sunoco in accordance with the requirements of Section 304(b) of the CAA, 42 U.S.C.

§ 7604(b).

### DEFENDANT

8.   Defendant Sunoco is a corporation organized under the laws of the State of

Pennsylvania and doing business in Philadelphia, Pennsylvania, Marcus Hook, Pennsylvania,

Toledo, Ohio and Tulsa, Oklahoma.

9.   Sunoco is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C.

§ 7602(e), and applicable federal and state regulations promulgated pursuant to the CAA.

### STATUTORY AND REGULATORY BACKGROUND
### CLEAN AIR ACT REQUIREMENTS

10.   The Clean Air Act established a regulatory scheme designed to protect and

enhance the quality of the nation's air so as to promote the public health and welfare and the

productive capacity of its population.  Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

11.   Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of EPA to

promulgate regulations establishing primary and secondary national ambient air quality standards

("NAAQS" or "ambient air quality standards") for certain criteria air pollutants.  The primary

NAAQS are to be adequate to protect the public health, and the secondary NAAQS are to be

adequate to protect the public welfare, from any known or anticipated adverse effects associated

with the presence of the air pollutant in the ambient air.

12.  Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit

4

to EPA for approval a State Implementation Plan ("SIP") that provides for the attainment and

maintenance of the NAAQS.

13.   Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to

designate those areas within its boundaries where the air quality is better or worse than the

NAAQS for each criteria pollutant, or where the air quality cannot be classified due to

insufficient data.  These designations have been approved by EPA and are located at 40 C.F.R.

Part 81.  An area that meets the NAAQS for a particular pollutant is classified as an "attainment"

area; one that does not is classified as a "non-attainment" area.

### Prevention of Significant Deterioration/New Source Review

14.   Part C of Title I of the Act, 42 U.S.C. §§ 7470-7479, sets forth requirements for the

prevention of significant deterioration ("PSD") of air quality in those areas designated as attaining

the NAAQS standards.  These requirements are designed to protect public health and welfare, to

assure that economic growth will occur in a manner consistent with the preservation of existing

clean air resources and to assure that any decision to permit increased air pollution is made only

after careful evaluation of all the consequences of such a decision and after public participation in

the decision-making process.  These provisions are referred to herein as the "PSD program."

15.   Section 165(a) of the Act, 42 U.S.C. § 7475(a), prohibits the construction and

subsequent operation of a major emitting facility in an area designated as attainment unless a PSD

permit has been issued.  Section 169(1) of the Act, 42 U.S.C. § 7479(1), defines "major emitting

facility" as a source with the potential to emit 250 tons per year (tpy) or more of any air pollutant.

16.  As set forth at 40 C.F.R. § 52.21(k), the PSD program generally requires a person who wishes to construct or modify a major emitting facility in an attainment area to demonstrate, before construction commences, that construction of the facility will not cause or contribute to air pollution in violation of any ambient air quality standard or any specified incremental amount.

17.  As set forth at 40 C.F.R. § 52.21(i), any major emitting source in an attainment area that intends to construct a major modification must first obtain a PSD permit.  "Major modification" is defined at 40 C.F.R. § 52.21(b)(2)(i) as meaning any physical change in or change in the method of operation of a major stationary source that would result in a significant net emission increase of any criteria pollutant subject to regulation under the Act.  "Significant" is defined at 40 C.F.R. § 52.21(b)(23)(i) in reference to a net emissions increase or the potential of a source to emit any of the following criteria pollutants, at a rate of emissions that would equal or exceed any of the following: for ozone, 40 tons per year of volatile organic compounds (VOCs); for carbon monoxide (CO), 100 tons per year; for nitrogen oxides (NOx), 40 tons per year; for sulfur dioxide ($SO_2$), 100 tons per year, (hereinafter "criteria pollutants").

18.  As set forth at 40 C.F.R. § 52.21(j), a new major stationary source or a major modification in an attainment area shall install and operate best available control technology ("BACT") for each pollutant subject to regulation under the Act that it would have the potential to emit in significant quantities.

19.  Section 161 of the Act, 42 U.S.C. § 7471, requires state implementation plans to contain emission limitations and such other measures as may be necessary, as determined under the regulations promulgated pursuant to these provisions, to prevent significant deterioration of air quality in attainment areas.

20.  Pursuant to 40 C.F.R. § 52.21(u), Pennsylvania, Ohio, and Oklahoma have been delegated authority to issue a PSD permit, and the AMS has been delegated the authority to enforce a PSD permit.

21.  Pursuant to the PSD regulations, any owner or operator who commences construction or modification of a major source without applying for and receiving approval for such construction or modification is subject to an enforcement action.  40 C.F.R. § 52.21(s).

22.  Part D of Title I of the Act, 42 U.S.C. §§ 7501-7515, sets forth provisions which direct States to include in their SIPs requirements to provide for reasonable progress towards attainment of the NAAQS in nonattainment areas.  Section 172(c)(5) of the Act, 42 U.S.C. § 7502(c)(5), provides that these SIPs shall require permits for the construction and operation of new or modified major stationary sources anywhere in the nonattainment area, in accordance with Section 173 of the Act, 42 U.S.C. § 7503, in order to facilitate "reasonable further progress" towards attainment of the NAAQS.

23.  Section 173 of Part D of the Act, 42 U.S.C. § 7503, requires that in order to obtain such a permit the source must, among other things:  (a) obtain federally enforceable emission offsets at least as great as the new source's emissions; (b) comply with the lowest achievable

emission rate as defined in Section 171(3) of the Act, 42 U.S.C. § 7501(3); and (c) analyze

alternative sites, sizes, production processes, and environmental control techniques for the

proposed source and demonstrate that the benefits of the proposed source significantly outweigh

the environmental and social costs imposed as a result of its location, construction, or

modification.

24.  As set forth in 40 C.F.R. § 52.24, no major stationary source shall be constructed

or modified in any non-attainment area as designated in 40 C.F.R. Part 81, Subpart C

("non-attainment area") to which any SIP applies, if the emissions from such source will cause or

contribute to concentrations of any pollutant for which a NAAQS is exceeded in such area,

unless, as of the time of application for a permit for such construction, such plan meets the

requirements of Part D, Title I, of the Act.

25.  A state may comply with Sections 172 and 173 of the Act by having its own

non-attainment new source review regulations approved as part of its SIP by EPA, which must

be at least as stringent as those set forth at 40 C.F.R. § 51.165.

26.  Pursuant to Section 113(b)(1) of the CAA, 42 U.S.C. § 7413(b)(1), the violation of

any requirement or provision of an applicable implementation plan is a violation of the CAA.

27.  Whenever any person has violated, or is in violation of, any requirement or

prohibition of any SIP, the United States is authorized to commence a civil action for a

permanent or temporary injunction and/or for a civil penalty.

28.  Pursuant to Section 304(a)(3) of the CAA, 42 U.S.C. § 7604(a)(3), Pennsylvania,

Ohio, Oklahoma and AMS are each authorized to commence a civil action against any person

who is alleged to have violated Parts C or D of Title I of the CAA.

**Flaring and New Source Performance Standards**

29.  Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), requires the

Administrator of EPA to publish a list of categories of stationary sources that emit or may emit

any air pollutant.  The list must include any categories of sources which are determined to cause

or significantly contribute to air pollution which may endanger public health or welfare.

30.  Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), requires the

Administrator of EPA to promulgate regulations establishing federal standards of performance for

new sources of air pollutants within each of these categories.  "New sources" are defined as

stationary sources, the construction or modification of which is commenced after the publication

of the regulations or proposed regulations prescribing a standard of performance applicable to

such source.  42 U.S.C. § 7411(a)(2).

31.  Pursuant to Section 111(b)(1)(A) of the CAA, 42 U.S.C. § 7411(b)(1)(A), EPA has

identified petroleum refineries as one category of stationary sources that cause, or contribute

significantly to, air pollution that may reasonably be anticipated to endanger public health or

welfare.

32.  Pursuant to Section 111(b)(1)(B) of the CAA, 42 U.S.C. § 7411(b)(1)(B), EPA

promulgated NSPS for various industrial categories, including petroleum refineries.  NSPS

requirements for petroleum refineries are codified at 40 C.F.R. Part 60, Subpart J, §§ 60.100-60.109.

33.   The provisions of 40 C.F.R. Part 60, Subpart J, apply to specified "affected facilities," including, inter alia, Claus sulfur recovery plants that have a capacity greater than 20 long tons per day and that commenced construction or modification after October 4, 1976, and all fluid catalytic cracking unit catalyst regenerators and fuel gas combustion devices that commenced construction or modification after June 11, 1973.  40 C.F.R. § 60.100(a),(b).

34.   40 C.F.R. § 60.102(a) prohibits the discharge into the atmosphere from any fluid catalytic cracking unit catalyst regenerator of (1) particulate matter in excess of 1.0 kg/1000 kg (1.0 lb/1000 lb) of coke burn-off in the catalyst regenerator, and (2) gases exhibiting greater than 30 percent opacity, except for one six-minute average opacity reading in any one hour period; except as provided for in 40 C.F.R. § 60.102(b).

35.   40 C.F.R. § 60.103(a) prohibits the discharge into the atmosphere from any catalytic cracking unit catalyst regenerator any gases that contain carbon monoxide ("CO") in excess of 500 ppm by volume (dry basis).

36.   Pursuant to 40 C.F.R. § 60.104(b), the owner or operator of each affected fluid catalytic cracking unit catalyst regenerator shall comply with one of the conditions set forth in 40 C.F.R. § 60.104(b)(1), (2), or (3).

37.   40 C.F.R. § 60.104(a)(2) prohibits sulfur recovery plants subject to 40 C.F.R. Part

60, Subpart J with reduction control systems followed by incineration from discharging in excess of 250 ppm by volume (dry basis) of $SO_2$ at zero percent excess air.  40 C.F.R. § 60.104(a)(2) prohibits sulfur recovery plants subject to 40 C.F.R. Part 60, Subpart J with reduction control systems not followed by incineration from discharging in excess of 300 ppm by volume of reduced sulfur compounds and in excess of 10 ppm by volume of hydrogen sulfide, each calculated as ppm $SO_2$ by volume (dry basis) at zero percent excess air.

38.  40 C.F.R. § 60.104(a)(1) prohibits the burning in any fuel gas combustion device any fuel gas that contains hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10.  The combustion in a flare of process upset gases or fuel gas that is released to the flare as a result of relief valve leakage or other emergency malfunctions is exempt from the emission limit of  40 C.F.R. § 60.104(a)(1).

39.  Pursuant to Section 111(b) of the CAA, 42 U.S.C. § 7411(b), EPA has promulgated general NSPS provisions, codified at 40 C.F.R. Part 60, Subpart A, §§ 60.1-60.19, that apply to owners or operators of any stationary source that contains an "affected facility" subject to regulation under 40 C.F.R. Part 60.

40.  40 C.F.R. § 60.11(d) requires that at all times, including periods of startup, shutdown, and malfunction, owners and operators shall, to the extent practicable, maintain and operate any affected facility including associated air pollution control equipment in a manner consistent with good air pollution control practice for minimizing emissions.

41.  Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits the operation of any

new source in violation of an NSPS applicable to such source.  Thus, a violation of an NSPS is a

violation of Section 111(e) of the CAA.

42.  Whenever any person has violated, or is in violation of, any requirement or

prohibition of any applicable New Source Performance Standard, Section 113(b) of the CAA, 42

U.S.C. § 7413(b), authorizes the United States to commence a civil action for a permanent or

temporary injunction and/or for a civil penalty.

43.  Pursuant to Section 304(a)(1) of the CAA, 42. U.S.C. § 7604(a)(1), Pennsylvania,

Ohio, Oklahoma and AMS are each authorized to commence a civil action against any person

who is alleged to have violated any emission standard or limitation under the CAA.

## Leak Detection and Repair

44.  Pursuant to Section 111 of the CAA, 42 U.S.C. § 7411, EPA promulgated New

Source Performance Standards for Equipment Leaks of VOCs in Petroleum Refineries at 40

C.F.R. Part 60, Subpart GGG.  Subpart GGG, in turn, incorporated many of the NSPS standards

at 40 C.F.R. Part 60, Subpart VV.  Pursuant to Section 112 of the CAA, 42 U.S.C. § 7412, EPA

promulgated emission standards for hazardous air pollutants ("National Emission Standards for

Hazardous Air Pollutants" or "NESHAPs") at 40 C.F.R. Part 61, and NESHAPs for source

categories at 40 C.F.R. Part 63.  The relevant NESHAPs are found at 40 C.F.R. Part 61,

Subpart J (for equipment leaks of benzene) and Subpart V (for equipment leaks); and 40 C.F.R.

Part 63, Subpart F (for organic hazardous air pollutants from the synthetic organic chemical

manufacturing industry), Subpart H (for organic hazardous air pollutants for equipment leaks) and Subpart CC (for hazardous air pollutants from petroleum refineries).

45.  The focus of the LDAR program is the refinery-wide inventory of all possible leaking equipment, the regular monitoring of that equipment to identify leaks, and the repair of leaks as soon as they are identified.

46.  Whenever any person has violated, or is in violation of, any requirement or prohibition of any applicable New Source Performance Standard or any applicable National Emission Standard for a Hazardous Air Pollutant, Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the United States to commence a civil action for a permanent or temporary injunction and/or for a civil penalty.

## Benzene Waste NESHAP

47.  The CAA requires EPA to establish emission standards for each "hazardous air pollutant" ("HAP") in accordance with Section 112 of the CAA, 42 U.S.C. § 7412.

48.  In March 1990, EPA promulgated national emission standards applicable to benzene-containing waste streams.  Benzene is a listed HAP and a known carcinogen.  The benzene waste regulations are set forth at 40 C.F.R. Part 61, Subparts FF, (National Emission Standard for Benzene Waste Operations).  Benzene is a naturally-occurring constituent of petroleum product and petroleum waste and is highly volatile.  Benzene emissions can be detected anywhere in a refinery where the petroleum product or waste materials are exposed to the ambient air.

49. Pursuant to the benzene waste NESHAP, refineries are required to calculate the total annual benzene ("TAB") content in their waste streams. If the TAB is over 10 megagrams, the refinery is required to elect a control option that will require the control of all waste streams, or control of certain select waste streams.

50. Pursuant to Section 113(b) of the CAA, 42 U.S.C. §7413(b), the United States may commence a civil action for injunctive relief and civil penalties for violations of the Act.

## FIRST CLAIM FOR RELIEF
### (CAA: PSD/NSR Violations at FCCU and Heaters and Boilers)

51. Paragraphs 1 through 50 are realleged and incorporated by reference as if fully set forth herein.

52. Sunoco owns and operates one or more fluidized catalytic cracking unit ("FCCU") regenerators at its Philadelphia, Marcus Hook and Toledo Refineries.

53. Sunoco owns and operates heaters and boilers at each of the Covered Refineries.

54. On information and belief, Sunoco has modified the FCCU regenerators at its Philadelphia, Marcus Hook and Toledo Refineries, and has modified the heaters and boilers at all of the Covered Refineries.

55. Upon information and belief, each modification was a "major modification" within the meaning of 40 C.F.R. § 52.21(b)(2), to existing major stationary sources that resulted in a significant net emissions increase of: (i) NOx, $SO_2$, PM, and CO from the FCCU regenerators; and (ii) NOx and $SO_2$ from the heaters and boilers.

56.  Since the initial construction or major modification of the FCCU regenerator and the heaters and boilers, Sunoco has been in violation of Section 165(a) of the CAA, 42 U.S.C. § 7475(a), and 40 C.F.R. § 52.21, and the corresponding state implementation plans, by failing to undergo PSD/NSR review for the fluidized catalytic cracking unit and the heaters and boilers, by failing to obtain permits, and by failing to install the best available control technology for the control of those pollutants for which a significant net emissions increase occurred.

57.  Unless restrained by an Order of the Court, these violations of the Clean Air Act and the implementing regulations will continue.

58.  The violations of Sunoco, as set forth above, subject it to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on and before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 69 Fed. Reg. 7121 (February 13, 2004).

## SECOND CLAIM FOR RELIEF
### (CAA:  NSPS Violations at the FCCU Catalyst Regenerators)

59.  Paragraphs 1 through 58 are realleged and incorporated by reference as if fully set forth herein.

60.  Sunoco is the "owner or operator," within the meaning of Section 111(a)(5) of the

CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of one or more fluidized catalytic cracking

unit regenerators at its Philadelphia, Marcus Hook and Toledo Refineries.

61.  Each FCCU regenerator is a "fluid catalytic cracking unit catalyst regenerator" as

defined in 40 C.F.R. § 60.101(n), and a "stationary source" within the meaning of

Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

62.  Each FCCU regenerator is an "affected facility" within the meaning of 40 C.F.R.

§§ 60.2 and 60.100(a), and a "new source" within the meaning of Section 111(a)(2) of the CAA,

42 U.S.C. § 7411(a)(2).

63.  Each FCCU regenerator is subject to the General Provisions of the NSPS, 40 C.F.R.

Part 60, Subpart A, and to the Standards of Performance for Petroleum Refineries, 40 C.F.R. Part

60, Subpart J.

64.  The FCCU regenerator is subject to the emission limitations set forth in 40 C.F.R.

§§ 60.102(a), 60.103(a), and 60.104(b).

65.  40 C.F.R. § 60.102(a) prohibits the discharge into the atmosphere from any FCCU

regenerator of (1) particulate matter in excess of 1.0 kg/1000 kg (1.0 lb/1000 lb) of coke burn-off

in the catalyst regenerator, and (2) gases exhibiting greater than 30 percent opacity, except for one

six-minute average opacity reading in any one hour period; except as provided for in 40 C.F.R. §

60.102(b).

66.  40 C.F.R. § 60.103(a) prohibits the discharge into the atmosphere from any

FCCU regenerator any gases that contain carbon monoxide ("CO") in excess of 500 ppm by volume (dry basis).

67.  Pursuant to 40 C.F.R. § 60.104(b), the owner or operator of each affected FCCU regenerator shall comply with one of the standards for sulfur oxides set forth in 40 C.F.R. § 60.104(1)(b), (2) or (3).

68.  Based upon information and belief, Sunoco has violated 40 C.F.R. §§ 60.102(a), 60.103(a) and/or 60.104(b), and thus Section 111 of the CAA, at its FCCU regenerators by not complying with the emissions standards set forth in those sections.

69.  Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

70.  The violations of Sunoco, as set forth above, subject it to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on and before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 69 Fed. Reg. 7121 (February 13, 2004).

**THIRD CLAIM FOR RELIEF**
**(CAA:  NSPS Violations at Sulfur Recovery Plants)**

71.  The allegations in Paragraphs 1 through 70 are hereby realleged and incorporated by

reference as if fully set forth herein.

72.  Sunoco is the "owner or operator," within the meaning of Section 111(a)(5) of the

CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of one or more sulfur recovery plants

("SRPs"), located at the Covered Refineries.

73.  Each of the SRPs is a "Claus sulfur recovery plant" as defined in 40 C.F.R.

§ 60.101(i), and a "stationary source" within the meaning of Sections 111(a)(3) and 302(z) of the

CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

74.  Each of the SRPs has a capacity of more than 20 long tons of sulfur per day.

75.  Each of the SRPs is an "affected facility" within the meaning of 40 C.F.R. §§ 60.2 and

60.100(a), and a "new source" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C.  §

7411(a)(2).

76.  Each of the SRPs is subject to the General Provisions of the NSPS, 40 C.F.R. Part

60, Subpart A, and to the Standards of Performance for Petroleum Refineries, 40 C.F.R. Part 60,

Subpart J.

77.  Each of the SRPs is subject to the emission limitation set forth in 40 C.F.R.

§ 60.104(a)(2)(i).

78. Based on information and belief, Sunoco has emitted into the atmosphere gases

containing in excess of (1) 250 ppm by volume (dry basis) of sulfur dioxide at zero percent

excess air, or (2) 300 ppm by volume of reduced sulfur compounds, from each of the SRPs, in violation of 40 C.F.R. § 60.104(a)(2) and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

79.   Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

80.   The violations of Sunoco, as set forth above, subject it to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on and before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 69 Fed. Reg. 7121 (February 13, 2004).

## FOURTH CLAIM FOR RELIEF
### (CAA:  NSPS Violations at Flaring Devices and Heaters and Boilers)

81.   The allegations in Paragraphs 1 through 80 are hereby realleged and incorporated by reference as if fully set forth herein.

82.   Sunoco is the "owner or operator," within the meaning of Section 111(a)(5) of the CAA, 42 U.S.C. § 7411(a)(5), and 40 C.F.R. § 60.2, of flaring devices and heaters and boilers located at each of the Covered Refineries.

83.   The flaring devices and heaters and boilers are "fuel gas combustion devices" as defined in 40 C.F.R. § 60.101(g), and "stationary sources" within the meaning of Sections 111(a)(3) and 302(z) of the CAA, 42 U.S.C. §§ 7411(a)(3) and 7602(z).

84. The flaring devices and heaters and boilers are "affected facilities" within the meaning of 40 C.F.R. §§ 60.2 and 60.100(a), and "new sources" within the meaning of Section 111(a)(2) of the CAA, 42 U.S.C. § 7411(a)(2).

85. The flaring devices and heaters and boilers are subject to the emission limitation set forth in 40 C.F.R. § 60.104(a)(1).

86. Sunoco has burned in the flaring devices and heaters and boilers at the Refinery fuel gas that contained hydrogen sulfide in excess of 230 milligrams per dry standard cubic meter, or, stated in terms of grains per dry standard cubic foot, 0.10, in violation of 40 C.F.R. § 60.104(a)(2) and Section 111(e) of the CAA, 42 U.S.C. § 7411(e).

87. Unless restrained by an order of the Court, these violations of the CAA and the implementing regulations will continue.

88. The violations of Sunoco, as set forth above, subject it to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on and before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 69 Fed. Reg. 7121 (February 13, 2004).

## FIFTH CLAIM FOR RELIEF
### (CAA: NSPS: 40 C.F.R. § 60.11(d))
### (Failing to Operate and Maintain the FCCU Regenerators, Sulfur Recovery Plants, Heaters and Boilers, and Flaring Devices

**in a Manner Consistent with Good Air Pollution Control Practice**)

89.  The allegations in Paragraphs 1 through 88 are hereby realleged and incorporated by reference as if fully set forth herein.

90.  Upon information and belief, since at least 2000, under circumstances that did not represent good air pollution control practices, Sunoco has emitted unpermitted quantities of the following pollutants in violation of 40 C.F.R. § 60.11(d):  (i) $SO_2$, PM, and CO from the FCCU regenerators at the Philadelphia, Marcus Hook and Toledo Refineries; and (ii) $SO_2$ from the sulfur recovery plants, flaring devices and heaters and boilers at the Covered Refineries.

91.  Unless restrained by an order of the Court, these violations of the Act and the implementing regulations will continue.

92.  The violations of Sunoco, as set forth above, subject it to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on and before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 69 Fed. Reg. 7121 (February 13, 2004).

## SIXTH CLAIM FOR RELIEF
### (Leak Detection and Repair Requirements)

93.  The allegations in Paragraphs 1 through 98 are realleged and incorporated by reference as if fully set forth herein.

94.  Sunoco is required under 40 C.F.R. Part 60, Subpart GGG, to comply with standards set forth at 40 C.F.R. § 60.592, which references standards set forth at 40 C.F.R. §§ 60.482-1 to 60.482-10, and alternative standards set forth at 40 C.F.R. §§ 60.483-1 to 60.483-2, for certain of its refinery equipment in light liquid and gas and/or vapor service, constructed or modified after January 4, 1983.

95.  Pursuant to 40 C.F.R. § 60.483-2(b)(1), an owner or operator of valves in light liquid and gas and/or vapor service must initially comply with the leak detection monitoring and repair requirements set forth in 40 C.F.R. § 60.482-7, including the use of Standard Method 21 to monitor for such leaks.

96.  Pursuant to 40 C.F.R. Part 61 Subpart J, Sunoco is required to comply with the requirements set forth in 40 C.F.R. Part 61, Subpart V, for certain specified equipment in light liquid and gas and/or vapor benzene service.

97.  Upon information and belief, since at least 2000, Sunoco has failed to accurately monitor the subject VOC valves and other components at the Covered Refineries as required by Standard Method 21, to report the VOC valves and other components that were leaking, and to repair all leaking VOC valves and other components in a timely manner.

98.  Sunoco's acts or omissions referred to in the preceding Paragraph constitute violations of the 40 C.F.R. Part 60, Subparts GGG and VV; 40 C.F.R. Part 61, Subparts J and V; and 40 C.F.R. Part 63, Subparts F, H, and CC.

99.  Unless restrained by an order of the Court, these violations of the Act and the implementing regulations will continue.

100.  The violations of Sunoco, as set forth above, subject it to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to

January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or after January 31, 1997, and on and before March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA, Pub. L. 104-134 and 69 Fed. Reg. 7121 (February 13, 2004).

## SEVENTH CLAIM FOR RELIEF
### (Benzene Waste NESHAP)

101.  The allegations in Paragraphs 1 through 100 are hereby re-alleged and incorporated by reference as if fully set forth herein.

102.  At all times relevant to this Complaint, Sunoco's Philadelphia, Marcus Hook and Toledo Refineries have each had a total annual benzene ("TAB") quantity from refinery waste of over 10 mg/yr, and have been subject to the requirements of the Benzene Waste NESHAP regulations set forth at  40 C.F.R. § 61.342.

103.  Upon information and belief, Sunoco has failed to comply with the requirements of of 40 C.F.R. § 61.342, by exceeding the benzene quantity limits set forth therein, in violation of the Benzene Waste NESHAP regulations and the Act.

104.  Unless restrained by an order of the Court, these violations of the Act and the implementing regulations will continue.

105.  The violations of Sunoco, as set forth above, subject it to injunctive relief and civil penalties of up to: (1) $25,000 per day for each violation of the Clean Air Act prior to January 31, 1997, 42 U.S.C. § 7413(b); (2) $27,500 per day for each violation occurring on or

after January 31, 1997, and on and before March 15, 2004, pursuant to Section 113(b) of the

CAA, Pub. L. 104-134 and 61 Fed. Reg. 69369 (December 31, 1996); and (3) $ 32,500 per day

for each violation occurring after March 15, 2004, pursuant to Section 113(b) of the CAA,

Pub. L. 104-134 and 69 Fed. Reg. 7121 (February 13, 2004).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States, respectfully requests that this Court:

1.  Order Sunoco to immediately comply with the statutory and regulatory requirements

cited in this Complaint under the Clean Air Act and the corollary state acts;

2.  Order Sunoco to take appropriate measures to mitigate the effects of its violations;

3.  Assess civil penalties against Sunoco for up to the amounts provided in the applicable

statutes; and

4. Grant the United States such other relief as this Court deems just and proper.

Respectfully submitted,

THE UNITED STATES OF AMERICA

Date: 6/9/05

KELLY A. JOHNSON
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

MICHAEL J. McNULTY, Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-1210
Fax: (202) 514-4180
Attorney-in-Charge for the United States


PATRICK L. MEEHAN
United States Attorney
Eastern District of Pennsylvania

Date: 6/9/05

MARGARET L. HUTCHINSON
Assistant United States Attorney
Pennsylvania Bar No.
616 Chestnut Street, Suite 1250
Philadelphia, Pennsylvania 19106

OF COUNSEL:
BRUCE FERGUSSON
Attorney-Advisor
U.S. Environmental Protection Agency
1200 Pennsylvania Ave, NW
Washington, DC 20460