IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff<br><br>And<br><br>STATE OF PENNSYLVANIA<br>CITY OF PHILADELPHIA<br>STATE OF OKLAHOMA<br>STATE OF OHIO<br>Plaintiff/Intervenors,<br><br>v.<br><br>SUNOCO, INC.<br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 05-02866 |

## FIRST AMENDMENT TO CONSENT DECREE

WHEREAS, the United States of America (hereinafter "the United States"); the Commonwealth of Pennsylvania, the City of Philadelphia, the State of Oklahoma, and the State of Ohio; and Sunoco, Inc. (hereinafter, "Sunoco") are parties to a Consent Decree entered by this Court on March 21, 2006 (hereinafter "the Consent Decree"); and

WHEREAS, Sunoco has agreed to sell and Holly Refining & Marketing - Tulsa LLC (hereinafter "Holly") has agreed to buy one of the refineries covered by that Consent Decree, to-wit: the Refinery located at Tulsa, Oklahoma (hereinafter "the Tulsa Refinery");

WHEREAS, the State of Oklahoma is the "Appropriate Plaintiff/Intervenor" for the Tulsa Refinery as that term is used in Paragraph 243 of the Consent Decree;

WHEREAS, Holly has contractually agreed to assume the obligations of, and to be bound by the terms and conditions of, the Consent Decree as such obligations, terms, and conditions relate to the Tulsa Refinery; and

WHEREAS, the United States and the State of Oklahoma agree, based on Holly's representations, that Holly has the financial and technical ability to assume the obligations and liabilities of the Consent Decree as they relate to the Tulsa Refinery; and

WHEREAS, the United States, the State of Oklahoma, Sunoco, and Holly desire to amend the Consent Decree to transfer to Holly the obligations, liabilities, rights, and releases of the Consent Decree as it pertains to the Tulsa Refinery and to release Sunoco from its obligations and liabilities under the Consent Decree insofar as they relate to the Tulsa Refinery as of the closing date for the sale of the Tulsa Refinery to Holly, June 1, 2009 ("the Closing Date");

WHEREAS, Paragraph 243 of the Consent Decree requires that this amendment be approved by the Court before it is effective;

WHEREAS, for the convenience of the Court, attached to this Amendment is a copy of the Consent Decree showing the proposed revisions listed below;

NOW THEREFORE, the United States, the State of Oklahoma, Sunoco, and Holly hereby agree that, upon approval of this amendment (the "First Amendment") by the Court, the Consent Decree shall thereby be amended as follows:

1.      Except as provided in Paragraph 2 of this amendment, effective on the Closing Date, Holly hereby assumes, and Sunoco is hereby released from, all obligations and liabilities imposed by the Consent Decree on the Tulsa Refinery, and the terms and conditions of the Consent Decree as they relate to the Tulsa Refinery shall hereby exclusively apply to, be binding upon, and be enforceable against Holly to the same extent as if Holly were specifically identified and/or named in those provisions of the Consent Decree.

2.      Holly shall not be responsible for any portion of the Civil Penalty provided for in Section X of the Consent Decree, which Civil Penalty the United States and the State of

Oklahoma acknowledge has been paid in full. In addition, the parties acknowledge that Holly's obligations with respect to the Tulsa Refinery did not commence before the Closing Date, such that Holly shall have no liability for obligations relating to the Tulsa Refinery or for any violations or those portions of any continuing violations occurring at the Tulsa Refinery before the Closing Date. Sunoco and Holly shall notify the United States and the State of Oklahoma of the Closing Date for the sale of the Tulsa Refinery.

3.       Except in Paragraphs 45 and 80.d, all references to "Sunoco Refinery(ies)" shall be revised to refer to "Refineries." The definition of "Sunoco Refinery(ies) (or "Refinery(ies))" in Paragraph 10.SS shall be revised to read as follows:

> SS.     "Refinery(ies)" shall mean the following four petroleum refineries (or one or more of the following four refineries): the refineries located in Marcus Hook, Pennsylvania/Claymont, Delaware; Philadelphia, Pennsylvania; and Toledo, Ohio owned by Sunoco (collectively, the "Sunoco Refineries"); and the refinery located in Tulsa, Oklahoma owned, as of the Closing Date, by Holly Refining & Marketing - Tulsa LLC ("Holly").

4.       Except as provided in Paragraphs 5 through 24 of this First Amendment (amending Paragraphs 27, 31, 65.a, 66, 70-71, 73, 75.b.i, 75.d.ii, 75.g, 77, 78, 80.d, 87, 88, 97, 114, 194, 221, and 222 of the Consent Decree):

> a.      All references to "Sunoco" in the Consent Decree in the introductory Paragraphs at V.A, V.B, V.C, V.D, Paragraphs 10.VV, 11-25, 29, 36, 37.b, 37.c, 38, 40-47, 51-63, 65.b, 67-68, 74.a, 75.a.i, 75.a.ii, 80.a, 92.a, 92.b, 93, 98-99, 103-113, 115-121, 129, 131, 152, 189, 218-220, 226-27, and 229 shall remain unchanged;

b.      All references to "Sunoco" in Paragraphs 39, 73.b, 75.b.ii, 75.d.i, and 77.b.ii, shall be revised to refer to "Holly"; and

c.      All other references to "Sunoco" in the Consent Decree shall be revised to refer to "Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery)."

5.      Paragraph 27 is revised to read as follows:

27.     **<u>NO$_x$ Emission Reductions from Heaters and Boilers</u>.**

a.      <u>NO$_x$ Emission Reductions from Sunoco Refinery Heaters and Boilers</u>.  On or before eight (8) years from Date of Entry, Sunoco shall use Qualifying Controls to reduce NO$_x$ emissions from the heaters and boilers greater than 40 mmBTU per hour by at least 2,011.8 tons per year, so as to satisfy the following inequality:

$$\sum_{i=1}^{n} [(E_{actual})_i - (E_{allowable})_i] \geq 2,011.8 \text{ tons of NO}_x \text{ per year}$$

Where:

$(E_{allowable})_i$    =    [(The permitted allowable pounds of NO$_x$ per million BTU for heater or boiler i, or the requested portion of the permitted reduction pursuant to Paragraph 100)/(2000 pounds per ton)] x [(the lower of permitted or maximum heat input rate capacity in million BTU per hour for heater or boiler i) x (the lower of 8760 or permitted hours per year)];

$(E_{actual})_i$    =    The tons of NO$_x$ per year prior actual emissions during calendar years 2001 and 2002 (unless prior actuals exceed

4

allowable emissions, then use allowable) as shown in Appendix B for controlled heater or boiler i; and

$n$ = The number of heaters and boilers with Qualifying Controls at all Sunoco Refineries from those listed in Appendix B that are selected by Sunoco to satisfy the requirements of the equation set forth in this paragraph.

For heaters and boilers at the Philadelphia and Marcus Hook Refineries at which Qualifying Controls are used to meet the requirements of this section V.F, those Qualifying Controls shall be installed by no later than June 15, 2010, unless this date is extended jointly by PADEP and/or AMS, and EPA.

b. <u>$NO_x$ Emission Reductions from Holly Heaters and Boilers</u>. On or before eight (8) years from Date of Entry, Holly shall use Qualifying Controls to reduce $NO_x$ emissions from the heaters and boilers greater than 40 mmBTU per hour by at least 177.2 tons per year, so as to satisfy the following inequality:

$$\sum_{i=1}^{n} [(E_{actual})_i - (E_{allowable})_i] \geq 177.2 \text{ tons of } NO_x \text{ per year}$$

Where:

$(E_{allowable})_i$ = [(The permitted allowable pounds of $NO_x$ per million BTU for heater or boiler i, or the requested portion of the permitted reduction pursuant to Paragraph 100)/(2000 pounds per ton)] x [(the lower of permitted or maximum heat input rate capacity in million BTU per hour for heater or boiler i) x (the lower of 8760 or permitted hours per year)];

$(E_{actual})_i$ = The tons of $NO_x$ per year prior actual emissions during calendar years 2001 and 2002 (unless prior actuals exceed allowable emissions, then use allowable) as shown in Appendix B for controlled heater or boiler i; and

| | | |
|---|---|---|
| $n$ | = | The number of heaters and boilers with Qualifying Controls at the Tulsa Refinery from those listed in Appendix B that are selected by Holly to satisfy the requirements of the equation set forth in this paragraph. |

c.      Averaging Periods. Permit limits established to implement this Paragraph may use a 365-day rolling average for heaters and boilers that use a CEMS or PEMS to monitor compliance. Otherwise, permit limits established to implement this Paragraph shall be based on the averaging periods set forth in the applicable reference test method.

6.      Paragraph 31 is revised to read as follows:

31.      Sunoco shall submit a detailed $NO_x$ Control Plan ("Control Plan") to EPA for review and comment by no later than four (4) months after Date of Entry of the Consent Decree. Thereafter, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall submit annual updates to the Control Plan every twelve (12) months ("Updates") until compliance with Paragraph 30 of the Consent Decree. The Control Plan and its Updates shall describe the achieved and anticipated progress of the $NO_x$ emission reductions program for heaters and boilers and shall contain the following for each heater and boiler greater than 40 mmBTU/hr that Sunoco (with regard to the Sunoco Refineries) or Holly (with regard to the Tulsa Refinery) plans to use to satisfy the requirements of Paragraphs 27, 29, and 30:

a.      All of the information in Appendix B;

b.      Identification of the type of Qualifying Controls installed or planned with the date installed or planned (including identification of the heaters and boilers to be permanently shut down);

c.     To the extent limits exist or are planned, the allowable $NO_x$ emission rates (in lbs/mmBTU (HHV), with averaging period) and allowable heat input rate (in mmBTU/hr (HHV)) obtained or planned with dates obtained or planned;

d.     The results of emissions tests and annual average CEMS or PEMS data (in ppmvd at 3% $O_2$ and lb/mmBTU) conducted pursuant to Paragraph 32, and tons per year; and

e.     The amount in tons per year applied or to be applied toward satisfying Paragraph 27.

Appendix B and the Control Plan and Updates required by this Paragraph shall be for informational purposes only and may contain estimates. They shall not be used to develop permit requirements or other operating restrictions. Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) may change any projections, plans, or information included in the Control Plan or updates.

7.     Paragraph 65.a is revised to read as follows:

a.     As of Date of Entry of the Consent Decree, at each of the Sunoco Refineries, Sunoco shall comply with the compliance option set forth at 40 C.F.R. § 61.342(c), utilizing the exemptions set forth in 40 C.F.R. §§61.342(c)(2) and (c)(3)(ii) (hereinafter 56 referred to as the "2Mg Compliance Option").

8.     Paragraph 66 is revised to read as follows:

66.    **Refinery Compliance Status Changes**.

Commencing on Date of Entry of the Consent Decree and continuing through the Date of Termination, to the extent applicable, Sunoco shall not change the compliance status of the Marcus

Hook, Philadelphia, or Toledo Refinery from the 6 BQ Compliance Option to the 2 Mg Compliance Option. If at any time after Date of Entry of the Consent Decree, the Tulsa Refinery is determined to have a TAB equal to or greater than 10 Mg/yr, Holly shall not utilize the 2Mg Compliance Option. Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall consult with the EPA, the appropriate EPA Region, and the appropriate state agency ("Relevant Government Agencies") before making any change in compliance strategy not expressly prohibited by this Paragraph. All changes must be undertaken in accordance with Subpart FF.

9. Paragraph 70 is revised to read as follows:

70. **Annual Review**. By no later than 180 days from Date of Entry of the Consent Decree, Sunoco shall modify (or establish) its existing management of change procedures or shall develop and implement new written procedures to provide for performance of an annual review of process information for each Covered Refinery, including construction projects, to ensure that all new benzene waste streams are included in the Covered Refinery's waste stream inventory. Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall conduct such reviews on an annual basis until the Date of Termination.

10. Paragraph 71 is revised to read as follows:

71. **Laboratory Audits**. Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall conduct audits of all laboratories that perform analyses of the Refinery's Benzene Waste Operations NESHAP samples to ensure that proper analytical and quality assurance/quality control procedures are followed. Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) may elect to submit the results from laboratory audits conducted by other refineries under the global consent decrees,

8

provided the audits meet the audit criteria of Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery).

     a.     Sunoco shall complete audits of at least half of the laboratories used by the Covered Refinery within 180 days after Date of Entry of the Consent Decree, and shall complete the remaining audits within 365 days after Date of Entry of the Consent Decree. In addition, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall audit any new laboratory used for analyses of benzene samples prior to use of the new laboratory.

     b.     Until the Date of Termination, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall conduct subsequent laboratory audits, such that each laboratory is audited every two (2) years.


11.    Paragraph 73 is revised to read as follows:

73.    **Training**. By no later than 90 days from Date of Entry of the Consent Decree, Sunoco shall develop and begin implementation of annual (i.e., once each calendar year) training for all employees assigned to draw benzene waste samples at each of the Sunoco Refineries.

     a.     Sunoco Refineries. For each of the Sunoco Refineries, by no later than 180 days from Date of Entry of the Consent Decree, Sunoco shall complete the development of standard operating procedures for all control equipment used to comply with the Benzene Waste Operations NESHAP at the Refinery. By no later than 180 days thereafter, Sunoco shall complete an initial training program regarding these procedures for all operators assigned to this equipment. Comparable training shall also be provided to any persons who subsequently become operators prior to their assumption of this duty.

Until the Date of Termination, "refresher" training in these procedures shall be performed on a three (3) year cycle.

  b. <u>Tulsa Refinery</u>. If and when the Tulsa Refinery TAB equals or exceeds 10 Mg/yr, Holly shall implement operating procedures and training requirements at the Tulsa Refinery comparable to those required by Paragraph 73.a. By no later than 270 days thereafter, Holly shall complete an initial training program regarding these procedures for all operators assigned to this equipment. Holly shall propose a schedule for training at the same time that Holly proposes a plan, pursuant to Paragraphs 68.a.ii or 75.f that identifies the compliance strategy and schedule that Holly shall implement to come into compliance with the 6 BQ Compliance Option at the Tulsa Refinery.

  c. As part of the training program, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) must require that the employees of any contractors hired to perform the requirements of this Section V.M are properly trained to implement all provisions of this Section at the relevant Refinery.

12. Paragraph 75.b.i is revised to read as follows:

  i. <u>Marcus Hook, Toledo, and Philadelphia Refineries</u>. Sunoco's BWON Sampling Plan for each of the Sunoco Refineries subject to the 2 Mg Compliance Option shall include: (i) a plan for conducting end-of-line ("EOL") sampling pursuant to Paragraph 75.c on a monthly basis (three (3) samples in the quarter, one (1) each month); (ii) a plan for conducting non-EOL sampling pursuant to Paragraph 75.d.ii on a quarterly basis: (iii) an identification of all proposed sampling locations; and (iv) a description of the proposed flow calculation

method to be used in making quarterly benzene determinations under Paragraph 75.e. At each of the Sunoco Refineries, EOL sampling means sampling at the last practicable point before the waste stream enters a controlled waste management unit, if, based on engineering judgment, EOL sampling would provide a result different than would be provided at the point of waste generation. EOL sampling is not required once the stream has entered a controlled waste management unit, as long as the waste stream remains controlled until either final discharge or discharge to an activated sludge treatment unit.

13. Paragraph 75.d.ii is revised to read as follows:

ii. For Sunoco Refineries, Sunoco's BWON Sampling Plan shall include a plan for sampling: (i) each uncontrolled waste stream that contributes greater than 0.05 Mg benzene per year toward the 2 Mg annual exempt waste total; and (ii) each uncontrolled waste stream that contains greater than 0.1 Mg benzene per year and that qualifies for the 10 ppmw benzene exemption.

14. Paragraph 75.g is revised to read as follows:

g. Third-Party TAB Study and Compliance Review. If, after two (2) consecutive Calendar Quarters it appears likely based on best engineering judgment that, at the end of the calendar year Sunoco will not be in compliance with the 2Mg Option at each Sunoco Refinery, or the TAB will exceed 10 Mg/yr at the Tulsa Refinery, then, in the third Calendar Quarter, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall retain a third party contractor to undertake a comprehensive TAB study and compliance review ("Third-Party TAB Study and Compliance

Review") at the relevant Refinery(ies). By no later than the last day of the third Calendar Quarter, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall submit a proposal to EPA that identifies the contractor, the contractor's scope of work, and the contractor's schedule for the Third-Party TAB Study and Compliance Review. Unless, within 30 days after EPA receives this proposal, EPA disapproves it or seeks modifications, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall authorize the contractor to commence work, and Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall ensure that the work is completed in accordance with the approved schedule. By no later than 30 days after Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) receives the results of the Third-Party TAB Study and Compliance Review, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall submit the results to EPA. After the report is submitted to EPA, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) and EPA shall discuss informally the results of the Third-Party TAB Study and Compliance Review. By no later than 90 days after Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) receives the results of the Third-Party TAB Study and Compliance Review, or at such other time as Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) and EPA may agree, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall submit to EPA for approval a plan and schedule for remedying any deficiencies identified in the Third-Party TAB Study and Compliance Review and any deficiencies that EPA brought to the attention of Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) as a result of the Third-Party

TAB Study and Compliance Review. Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall implement the EPA-approved remedial plan in accordance with the schedule included in the approved plan. If, for the Tulsa Refinery, it appears that appropriate actions cannot be taken to ensure that the Tulsa Refinery consistently can maintain a TAB of under 10 Mg/yr when measured at the point of generation, then Holly's plan shall identify with specificity the compliance strategy and schedule that Holly shall implement to ensure that the Tulsa Refinery complies with the 6BQ Compliance Option as soon as practicable.

15.     Paragraph 77 is revised to read as follows:

77.     **Recordkeeping and Reporting Requirements for this Section**.

      a.     Outside of the Reports required under 40 C.F.R. § 61.357 and under the progress report procedures of Section IX of this Consent Decree, to the extent required by this Decree, and at the times specified by this Section V.M , Sunoco shall submit the following reports i-vi, viii, and x to EPA, and Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall submit the following reports vii, ix, and xi-xv to EPA:

      i.     Phase One BWON Compliance Review and Verification Report(s) (Paragraph 67.a);

      ii.     Phase Two BWON Compliance Review and Verification Report(s), as amended, if necessary (Paragraph 67.b);

      iii.     Amended TAB Report(s), if necessary (Paragraph 67.c);

      iv.     Any BWON Corrective Action Plans required if the BWON Compliance Review and Verification Reports indicate non-compliance (Paragraph 68.a.i.);

v.      A BWON Corrective Action Plan for the Tulsa Refinery if the Refinery's TAB is found to equal or exceed 10 Mg/yr (Paragraph 68.a.ii.);

vi.     Certification of compliance, if necessary (Paragraph 68.b);

vii.    A report certifying the completion of the installation of dual carbon canisters (Paragraph 69.b);

viii.   Schematics of waste/slop/off-spec oil movements, as revised, if necessary (Paragraph 74.a);

ix.     A plan and schedule for installing and operating necessary controls on waste management units handling organic benzene waste, if necessary (Paragraph 74.b);

x.      A plan to quantify uncontrolled waste/slop/off-spec oil movements (Paragraph 75.a.i);

xi.     BWON Sampling Plans and revised BWON Sampling Plans, if necessary (Paragraph 75);

xii.    A Corrective Measures Plan (Paragraph 75.f);

xiii.   A proposal for a Third-Party TAB Study and Compliance Review, if necessary (Paragraph 75.g);

xiv.    A Third-Party TAB Study and Compliance Review, if necessary (Paragraph 75.g); and

xv.     A plan to implement the results of the Third-Party TAB Study and Compliance Review, if necessary (Paragraph 75.g).

b.      As part of either the Reports Required under 40 C.F.R. § 61.357 or the progress report procedures of Section IX of the Consent Decree, to the extent

required by this Decree, and at the times specified by this Section V.M, Sunoco

(with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa

Refinery) shall submit the following reports to EPA:

    i.    <u>Covered Refinery</u>. In addition to the information submitted in the reports

required pursuant to 40 C.F.R. §§ 61.357(d)(6) and (7) ("Section 61.357

Reports"), each Covered Refinery shall include the following information in those

reports or in the reports due under Section IX of this Decree:

    (1)    <u>Laboratory Audits</u>. In the first Section 61.357 Report or first Section IX

report due after Sunoco has completed the requirements of Paragraph 71.a,

Sunoco shall identify all laboratory audits that Sunoco completed,

including, at a minimum, the identification of each laboratory audited, a

description of the methods used in the audit, and the results of the audit. In

each subsequent 61.357 Report or Section IX report, Sunoco (with regard

to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery)

shall identify all laboratory audits that were completed pursuant to the

provisions of Paragraph 71.b during the Calendar Quarter, including in

each such Report, at a minimum, the identification of each laboratory

audited, a description of the methods used in the audit, and the results of

the audit;

    (2)    <u>Training</u>. In the first Section 61.357 Report or Section IX report due after

entry of this Consent Decree, Sunoco shall describe the measures that it

took to comply with the training provisions of Paragraph 73 starting from

Date of Entry of the Consent Decree and continuing through the Calendar

Quarter for which the first report is due. In each subsequent Section 61.357 Report or Section IX report, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall describe the measures that Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) took to comply with the training provisions of Paragraph 73 during the Calendar Quarter;

(3)     Sampling Results. Once EOL sampling and non-EOL sampling is required under this Section, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall report, in each Section 61.357 Report or each Section IX report, the results of the monthly EOL sampling and quarterly non-EOL sampling undertaken pursuant to Paragraph 75. For each Covered Refinery, the report shall include a list of all waste streams sampled, the results of the benzene analysis for each sample, and the computation of the quarterly benzene quantity and the projected calendar year benzene quantity.

ii.     Tulsa Refinery. Holly shall submit, for the Tulsa Refinery, the information required by this Subparagraph 77.b.ii in Section IX reports. For each Calendar Quarter, Holly shall submit, for the Tulsa Refinery, the information described in subparagraphs 77.b.i(1), i(3). If, before the Date of Termination, the TAB at the Tulsa Refinery equals or exceeds 10 Mg/yr and Holly completes the installation of the measures necessary to comply with the 6BQ Compliance Option at the Tulsa Refinery, Holly must submit the information described in subparagraphs

77.b.i(1), i(3) and may elect to submit this information in Section 61.357 Reports instead of the Section IX reports.

16.     Paragraph 78 is revised to read as follows:

78.     **<u>Written Refinery-Wide LDAR Program and Compliance Certification</u>.**

<u>Enhanced LDAR Program Description</u>. By no later than 180 days after Date of Entry of the Consent Decree, Sunoco shall develop, for each Refinery, a written description of a refinery-wide program designed to achieve and maintain compliance with all applicable federal and state LDAR regulations, as well as all requirements imposed by this Section V.N. Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall update each Refinery's program description as necessary to ensure continuing compliance. By no later than 180 days after Date of Entry of the Consent Decree, Sunoco shall submit copies of its enhanced LDAR program descriptions to EPA and the Appropriate Plaintiff/Intervenor, and Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall maintain at each Refinery an updated version of that Refinery's program description. Until the Date of Termination, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall use the enhanced LDAR program descriptions prepared pursuant to this Paragraph to implement an enhanced LDAR program at each Refinery, as required by this Section V.N. Each Refinery's program description shall include at a minimum:

a.      A set of refinery-specific leak rate goals that will be a target for achievement on a process-unit-by-process-unit basis;

b.     An identification of all equipment in light liquid and/or in gas/vapor service that has the potential to leak VOCs, HAPs, VHAPs, and benzene within process units that are owned and maintained at each Refinery;

c.     Procedures for identifying leaking equipment within process units that are owned and maintained at each Refinery;

d.     Procedures for repairing and keeping track of leaking equipment;

e.     Procedures for identifying and including in the LDAR program new equipment;

f.     A process for evaluating new and replacement equipment to promote consideration and installation of equipment that will minimize leaks and/or eliminate chronic leakers;

g.     A designation of the "LDAR Personnel" and the "LDAR Coordinator" who are responsible for implementing the enhanced LDAR program at the Refinery; and

h.     Procedures designed to ensure that components subject to LDAR requirements that are added to the Refinery during scheduled maintenance and construction activities are integrated into the enhanced LDAR program.


17.     Paragraph 80.d is revised to read as follows:

d.     Internal Audits. Sunoco shall conduct internal audits of the Marcus Hook, Toledo, and Philadelphia Refineries' LDAR program by sending personnel familiar with the LDAR program and its requirements from one or more of Sunoco's Refineries or locations to audit another Sunoco Refinery. Sunoco shall complete the first round of these internal LDAR audits at all Refineries by no later than two (2) years from the date of the

completion of the initial third-party audit required in Paragraph 80.a. Internal audits at each Refinery using personnel familiar with the LDAR program and its requirements from another Refinery (or in the case of Holly, from another Holly refinery) shall be held every four (4) years thereafter until the Date of Termination unless Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) elects to retain third-parties to conduct these audits pursuant to Paragraph 80.c.

18.     Paragraph 87 is revised to read as follows:

87.     **QA/QC of LDAR Data**.

   a.     By no later than 120 days after Date of Entry of the Consent Decree, Sunoco, or a third-party contractor retained by Sunoco, shall develop and, thereafter, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall implement a procedure at each Refinery to ensure a quality assurance/quality control ("QA/QC") review of all data generated by LDAR monitoring technicians.

      i.     Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall ensure that monitoring data provided to Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) by its contractors is reviewed for QA/QC before the contractor submits the data to Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery).

      ii.     At least once per Calendar Quarter, Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall perform QA/QC

of any contractor's monitoring data which shall include, but not be limited to: number of components monitored per technician, time between monitoring events, and abnormal data patterns.

iii.     Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall implement a system for daily reporting of monitored activity and for periodically reviewing the daily results by appropriate operating supervisors.

19.     Paragraph 88 is revised to read as follows:

88.     **LDAR Personnel**. By no later than 180 days after Date of Entry of the Consent Decree, Sunoco shall establish a program that will hold LDAR personnel accountable for LDAR performance. Sunoco shall establish and Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall maintain an LDAR Coordinator position within each Refinery, responsible for LDAR management, with the authority to implement improvements.

20.     Paragraph 97 is revised to read as follows:

97.     **General Prohibition**. Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall not generate or use any NOx, SO2, PM, VOC, or CO emissions reductions that result from any projects conducted or controls utilized to comply with this Consent Decree as netting reductions or emissions offsets in any PSD, major non-attainment and/or minor New Source Review ("NSR") permit or permit proceeding unless otherwise authorized under Paragraphs 99 or 100. The parties agree that this Consent Decree

neither prohibits, nor provides any basis for prohibiting, Sunoco from combining decreases in emissions resulting from work pursuant to this Consent Decree with emissions increases resulting from work related to a FCCU expansion undertaken at the same time, in any emissions calculation for any single permit or permit proceeding that involves both installation of controls pursuant to this Consent Decree and construction related to the FCCU expansion. PADEP, AMS, and Sunoco further agree that this Consent Decree neither prohibits, nor provides any basis for prohibiting, nor authorizes, nor provides any basis for authorizing, Sunoco from using, under Pennsylvania's PSD and non-attainment NSR programs, $SO_3$ reductions resulting from the installation of controls when addressing emissions of $PM_{2.5}$. AMS and Sunoco further agree that when permitting the FCCU expansions and related projects undertaken at the same time as discussed above, under Pennsylvania's PSD and non-attainment NSR programs at the Philadelphia Refinery, Sunoco and AMS may use up to 10% of the $SO_2$ emissions reductions (excluding the $SO_2$ portion attributable to the combustion of sour water stripper gas in the CO Boiler), and up to 15% of the $NO_x$ emissions reductions that result from installation of SCR and WGS on the FCCU. PADEP and Sunoco further agree that when permitting the FCCU expansions and related projects undertaken at the same time as discussed above, under Pennsylvania's PSD and non-attainment NSR programs at the Marcus Hook Refinery, Sunoco and PADEP may use up to 5% of the $SO_2$ emissions reductions and up to 15% of the $NO_x$ emissions reductions that result from installation of SCR and WGS on the FCCU. Except as provided in paragraphs 99 and 100, all of the remaining $SO_2$ and $NO_x$ emissions reductions that are not used at that time shall be permanently retired.

21.    Paragraph 114 is revised to read as follows:

114. Beginning with the first full Calendar Quarter after Date of Entry of the Consent Decree, Sunoco shall submit to EPA and the Appropriate Plaintiff/Intervenors within 30 days after the end of each Calendar Quarter through 2005, and Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall submit to EPA and the Appropriate Plaintiff/Intervenor semi-annually thereafter until termination of this Consent Decree, a progress report for each of the Refineries. Each report shall contain, for the relevant Refinery, the following: progress report on the implementation of the requirements of Section V ("Affirmative Relief/Environmental Projects") at the relevant Refinery; a summary of the emissions data for the relevant Refinery that is specifically required by the reporting requirements of Section V of this Consent Decree for the period covered by the report; a description of any problems anticipated with respect to meeting the requirements of Section V of this Consent Decree at the relevant Refinery; and any such additional matters as Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) believes should be brought to the attention of EPA and the Appropriate Plaintiff/Intervenor. The report shall be certified by either the person responsible for environmental management at the appropriate Refinery or by a person responsible for overseeing implementation of this Decree across Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) as follows:

> I certify under penalty of law that this information was prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my directions and my inquiry of the person(s) who manage the system, or the person(s) directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.

22.     Paragraph 194 is revised to read as follows:

194.    Payment of Stipulated Penalties. Stipulated penalties owed by Sunoco (with regard to the Sunoco Refineries) and/or Holly (with regard to the Tulsa Refinery) shall be paid 50% to the United States and 50% to the Appropriate Plaintiff/Intervenor. Stipulated penalties owed by Sunoco for SCEPs shall be paid 50% to the United States and 50% to the Appropriate Plaintiff/Intervenor. Stipulated penalties owed by Sunoco for SLEBPs shall be paid to the Appropriate Plaintiff/Intervenor. Stipulated penalties owing to the United States of under $10,000 will be paid by check and made payable to "U.S. Department of Justice," referencing DOJ Case Number 90-5-2-1744/1 and USAO File Number 2006Z00256, and delivered to the U.S. Attorney's Office for the Eastern District of Pennsylvania. Stipulated penalties owing to the United States of $10,000 or more and stipulated penalties owing to a Plaintiff/Intervenor will be paid in the manner set forth in Section X (Civil Penalty) of this Consent Decree. Stipulated penalties owing to the State of Ohio will be paid by cashier's or certified check payable to the "Order of Treasurer, State of Ohio," and sent to Amy Laws, Paralegal, or her successor, Paralegal, Office of the Attorney General of Ohio, Environmental Enforcement Section, 30 East Broad Street, 25th Floor, Columbus, Ohio 43215-3400. The memo portion of the check, or some other prominent location on the transmittal letter or documentation, shall include a reference to "A.G. EAGO No. 283198."

23.     Paragraph 221 is revised to read as follows:

221.    **Exclusions from Release Coverage Regarding Applicable PSD/NSR Requirements: Construction and/or Modification Not Covered by Paragraphs 217-219.**

a.  Sunoco. Notwithstanding the resolution of liability in Paragraphs 217-219, nothing in this Consent Decree precludes the United States and/or the Plaintiff/Intervenors from seeking from Sunoco injunctive relief, penalties, or other appropriate relief for violations by Sunoco of the Applicable NSR/PSD Requirements resulting from: (1) construction or modification at the Marcus Hook, Philadelphia, Toledo or Tulsa Refineries that commenced prior to the Date of Lodging of the Consent Decree, if the resulting violations relate to pollutants or units not covered by the Consent Decree; (2) any construction or modification at the Marcus Hook, Philadelphia or Toledo Refineries that commence after the Date of Lodging of the Consent Decree; or (3) any construction or modification at the Tulsa Refinery that commences after the Date of Lodging of the Consent Decree and up to and including the Closing Date for the sale of the Tulsa Refinery.

b.  Holly. Notwithstanding the resolution of liability in Paragraphs 217-219, nothing in this Consent Decree precludes the United States and/or the Plaintiff/Intervenors from seeking from Holly (1) injunctive relief for violations of the Applicable NSR/PSD Requirements resulting from construction or modification at Tulsa Refinery that commenced prior to the Closing Date for the sale of the Tulsa Refinery, if the resulting violations relate to pollutants or units not covered by the Consent Decree; or (2) injunctive relief, penalties, or other appropriate relief for violations by Holly of the Applicable NSR/PSD Requirements resulting from any construction or modification at the Tulsa Refinery that commences after the Closing Date for the sale of the Tulsa Refinery.

24.    Paragraph 222 is revised to read as follows:

222.    **Evaluation of Applicable PSD/NSR Requirements**.

a.    <u>Sunoco.</u>  With respect to the Marcus Hook, Philadelphia and Toledo Refineries, increases in emissions from units covered by this Consent Decree, where the increases result from the Post-Lodging construction or modification of any units within the Marcus Hook, Philadelphia or Toledo Refineries, are beyond the scope of the release in Paragraphs 217-219, and Sunoco is not relieved from any obligation to evaluate any such increases in accordance with the Applicable PSD/NSR Requirements.  With respect to the Tulsa Refinery, increases in emissions from units covered by this Consent Decree, where the increases result from the Post-Lodging construction or modification of any units within the Tulsa Refinery, up to and including the Closing Date for the sale of the Tulsa Refinery, are beyond the scope of the release in Paragraphs 217-219, and Sunoco is not relieved from any obligation to evaluate any such increases in accordance with the Applicable PSD/NSR Requirements.

b.    <u>Holly.</u>  With respect to the Tulsa Refinery, increases in emissions from units covered by this Consent Decree, where the increases result from the construction or modification of any units within the Tulsa Refinery after the Closing Date for the sale of the Tulsa Refinery, are beyond the scope of the release in Paragraphs 217-219, and Holly is not relieved from any obligation to evaluate any such increases in accordance with the Applicable PSD/NSR Requirements.


25.    Paragraph 240 is hereby amended to remove the references to and the address for the Tulsa Refinery from the addresses listed for Sunoco and to include the following information, and to update the addresses for EPA Headquarters:

As to Holly:

>Refinery Manager
>1700 South Union
>Tulsa, OK 74107

With a copy to:

>General Counsel
>Holly Corporation
>100 Crescent Court, Suite 1600
>Dallas, Texas 75201

As to EPA:

>Director, Air Enforcement Division
>Office of Civil Enforcement
>U.S. Environmental Protection Agency
>Mail Code 2242-A
>1200 Pennsylvania Avenue, N.W.
>Washington, DC 20460-0001

With a hard copy to:

>Director, Air Enforcement Division
>Office of Civil Enforcement
>c/o Matrix New World Engineering, Inc.
>120 Eagle Rock Ave., Suite 207
>East Hanover, NJ 07936-3159

and an electronic copy to

>csullivan@matrixneworld.com
>foley.patrick@epa.gov

26. The undersigned representatives are fully authorized to enter into the terms and conditions of this amendment.

27.     Neither the approval of Holly with respect to the Sunoco Refineries nor the approval of Sunoco with respect to the Tulsa Refinery shall be required for any future amendments of this Consent Decree to address a sale of all or any portion of a Refinery covered by this Consent Decree.

28.     This amendment may be executed in several counterparts, each of which will be considered an original.

## ORDER

Before the taking of any testimony, without adjudication of any issue of fact or law, and upon the consent and agreement of the Parties, it is:

ORDERED, ADJUDGED and DECREED that this First Amendment to the Consent Decree is hereby approved and entered as a final order of this court.

Dated and entered this _____ day of _____, 2009.


_____
United States District Judge

WE HEREBY CONSENT to the foregoing First Amendment to the Consent Decree entered in

*United States, et al., v. Sunoco, Inc.*, Civil No. 05-02866.

FOR PLAINTIFF THE UNITED STATES OF AMERICA:

Date: _____

JOHN C. CRUDEN
Acting Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice
Washington, DC 20460

Date: 5/27/09

ROBERT D. BROOK
Assistant Chief
Environmental Enforcement Section
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044-7611

WE HEREBY CONSENT to the foregoing First Amendment to the Consent Decree entered in

*United States, et al., v. Sunoco, Inc.*, Civil No. 05-02866 on March 21, 2006.


FOR PLAINTIFF THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Date: _May 28, 2009_

_____

ADAM M. KUSHNER
Director, Office of Civil Enforcement
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C.  20460-0001


Date: _May 22, 2009_

_____

JOHN FOGARTY
Senior Attorney, Air Enforcement Division
Office of Civil Enforcement
United States Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C.  20460-0001

WE HEREBY CONSENT to the entry of the First Amendment to the Consent Decree entered in

*United States, et al., v. Sunoco, Inc.*, Civil No. 05-02866.


FOR PLAINTIFF/INTERVENOR THE COMMONWEALTH OF PENNSYLVANIA:


Date: _5/28/09_           *Francine Carlini* 57 203

FRANCINE CARLINI
Regional Manager
Air Quality
Commonwealth of Pennsylvania
Department of Environmental Protection
2 East Main Street
Norristown, PA  19401

WE HEREBY CONSENT to the entry of the First Amendment to the Consent Decree entered in

*United States, et al., v. Sunoco, Inc.*, Civil No. 05-02866.

FOR PLAINTIFF/INTERVENOR THE CITY OF PHILADELPHIA:

Date: ___5/28/09___      _Patrick K. O'Neill by RDS_

                               PATRICK K. O'NEILL
                               Divisional Deputy City Solicitor, Environmental
                               Law
                               City of Philadelphia Law Dept.
                               One Parkway Bldg. 16th Floor
                               1515 Arch Street
                               Philadelphia, PA 19102

                               ATTORNEY FOR PLAINTIFF/INTERVENOR
                               CITY OF PHILADELPHIA

WE HEREBY CONSENT to the entry of the First Amendment to the Consent Decree entered in

*United States. et al., v. Sunoco, Inc.*, Civil No. 05-02866 on  March 21, 2006  .

FOR PLAINTIFF/INTERVENOR THE STATE OF OKLAHOMA:


Date: 5/27/2009

_for_ _(signature)_

STEVEN A. THOMPSON
Executive Director
Oklahoma Department of Environmental Quality
707 North Robinson
P.O. Box 1677
Oklahoma City, Oklahoma 73101-1677

WE HEREBY CONSENT to the entry of the First Amendment to the Consent Decree entered in

*United States, et al., v. Sunoco, Inc.*, Civil No. 05-02866.

FOR PLAINTIFF/INTERVENOR THE STATE OF OHIO:

RICHARD CORDRAY
Attorney General of Ohio

Date: _5/2?/09_          By: _Gregg Bachman by ?PB_

GREGG BACHMAN
Senior Assistant Attorney General
Supervisor Air Enforcement Unit
30 East Broad Street, 25th Floor
Columbus, Ohio 43215-3400

ATTORNEY FOR PLAINTIFF/INTERVENOR
STATE OF OHIO

WE HEREBY CONSENT to the foregoing First Amendment to the Consent Decree entered in

*United States, et al., v. Sunoco, Inc.*, Civil No. 05-02866 on  March 21, 2006        .

FOR DEFENDANT SUNOCO, INC.:

Date: 5/26/09

VINCENT J KELLEY
Senior Vice President – Refining and Supply
Sunoco, Inc.
1801 Market Street
Philadelphia, PA  19103

Date: 5/27/09

ARNOLD D. DODDERER
Senior Counsel
Sunoco, Inc. (R&M)
100 Green Street
P.O. Box 426
Marcus Hook, PA  19061
ATTORNEY FOR SUNOCO, INC.

WE HEREBY CONSENT to the entry of the First Amendment to Consent Decree entered in

*United States, et al., v. Sunoco, Inc.*, Civil No. 05-02866 on   March 21, 2006   .


FOR HOLLY REFINING & MARKETING – TULSA LLC

By:_____

George J. Damiris
Sr. Vice President, Supply & Marketing


Date:   5-26-09